UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

Pablo BERIGUETE,

                        Petitioner,

                                           **MEMORANDUM & ORDER**
            v.                                     CV-08-4403 (PKC)

Robert ECOLE, Superintendent,

                        Respondent.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Pablo Beriguete ("Petitioner") brings this pro se Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, attacking his 2006 State convictions on one count of Murder in the Second Degree and one count of Criminal Contempt in the First Degree. Petitioner claims that (1) the trial court erred when it failed to grant defense counsel's request to charge the jury with the lesser included offense of Manslaughter in the Second Degree; (2) the trial court erroneously admitted evidence of Petitioner's prior bad acts relating to the victim; (3) the evidence at trial was insufficient to establish Petitioner's guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence; and (4) Petitioner's sentence of 25 years to life was harsh and excessive. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

      On September 2, 2004, Petitioner stabbed and killed his wife, Grecia Ogando, at her home in Bayshore, New York, during an argument.[1] Petitioner was immediately apprehended in

---

[1] Because Petitioner was convicted, the Court recites the relevant facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

the apartment where the stabbing took place. Ms. Ogando (the "Victim") died before she could be transported to the hospital. Petitioner was convicted, following a jury trial, of Murder in the Second Degree (New York Penal Law § 125.25, sub.3) and Criminal Contempt in the First Degree (New York Penal Law § 215.51).

I. **Pretrial Proceedings**

   A. *Huntley Hearing*

The following facts were adduced at Petitioner's *Huntley* hearing,[2] which took place on July 21, 2005. Following Petitioner's arrest on the night of the stabbing, at about 10:43 p.m., Suffolk County Police Officer Juan Giacotta assisted two Suffolk County detectives in interviewing Petitioner (H. 9-13, 30-33, 43-44).[3] Officer Giacotta advised Petitioner of his *Miranda* rights from a rights card (H. 9-14, 44). After waiving his rights, but before being asked about the substance of the events for which he was arrested, Petitioner stated that he was sorry (H. 17, 34, 47). Upon being asked what happened, Petitioner responded that he stabbed his wife because he was angry, and she had hit him with a spoon (H. 17, 47-48). When asked about blood on his shirt, Petitioner responded that it was his wife's blood; Petitioner then became upset and said he could not talk any more (H. 18, 34-35, 48). Officer Giacotta and the detectives then left the room (H. 19, 55-56). Petitioner was never made any promises, beaten, or threatened by police (H. 50-51). Petitioner was permitted to use the bathroom, was offered and accepted a drink, and was offered something to eat (H. 50). Petitioner later voluntarily signed a consent form to give a buccal swab (H. 21-23, 49). Detective Higgins performed the swab (H. 65).

---

[2] *See People v. Huntley*, 15 N.Y.2d 72, 77, 255 N.Y.S.2d 838 (1965) (establishing criminal defendant's right to a pretrial hearing to determine the voluntariness of his/her confession).

[3] "H." refers to the hearing minutes of Petitioner's *Huntley* hearing on July 21, 2005. All police officers and detectives involved in this case were members of the Suffolk County Police Department. (*See*, *e.g.*, H. 6-7).

### B. *Molineux/Ventimiglia Hearing*

The County Court conducted a pretrial *Molineux/Ventimiglia* hearing[4] on November 2-3, 2005. At that hearing, the prosecutor requested that the People be permitted to introduce evidence of Petitioner's commission of prior criminal acts against the Victim (H2. 7)[5]. These acts related to domestic disputes between the couple. *Id.*

Patria, 18, the eldest daughter of Petitioner and the Victim, testified for the prosecution. *Id.* She testified that in 2003, her parents were living together in Bay Shore and were constantly arguing and fighting. *Id.* She also testified that on November 30, 2003, police responded to her home during one of her parents' more violent arguments. *Id.* She stated that her father had tried to kill her mother during the argument with a knife (H2. 7). The Victim then ran into her bedroom and tried to close the door, but Petitioner kept pushing on it while still holding the knife in his hand (H2. 8). The police were called, and Petitioner was arrested. *Id.* The Victim subsequently obtained an order of protection against Petitioner, and initiated divorce proceedings.

Police Officer Anthony Leto testified that on November 30, 2003, he responded to a report of a domestic dispute at North Gardiner Drive, Bay Shore. There, he learned that Petitioner had threatened his wife with a knife. Patria provided to Officer Leto the knife used in the incident. Police arrested Petitioner for unlawful imprisonment and menacing (H2. 32-35).

---

[4] A pre-trial hearing to determine the admissibility of evidence of a criminal defendant's prior uncharged crimes is commonly referred to in New York as a *Molineux/Ventimiglia* hearing. *See People v. Ventimiglia,* 52 N.Y.2d 350, 438 N.Y.S.2d 261, 420 N.E.2d 59 (1981); *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286 (N.Y.1901).

[5] "H2." refers to the November 2, 2005 transcript of Petitioner's *Molineux/Ventimiglia* hearing.

The hearing court ruled that the *Molineux* evidence was admissible as, "highly probative of the Petitioner's motive and was either directly related or inextricably interwoven with the issue of identity with the assailant." (H2. 28).

## II.    Trial, Conviction, and Sentence

At trial, the following facts were established:

At approximately 8:23 p.m. on September 2, 2004, Officer Frank Garafano responded to a report of a domestic dispute at 40 Oak Ridge Drive, North Bay Shore, New York. The address belonged to a two-story house with a two-car garage converted into an apartment. Upon approaching the house, Officer Garafano saw a neighbor standing by the yard's front gate and another man, later identified as Petitioner, standing just inside the gate at 40 Oak Ridge Drive. The neighbor pointed to Petitioner, and stated, "[h]e just stabbed his wife." Petitioner mumbled, "I'm sorry, I'm sorry," turned, and put his hands behind his back as if expecting to be handcuffed. (T. 295-324, 326-27).[6]

Inside the small apartment, the couple's three daughters, ages 18, 14, and 7, were giving assistance to their mother, who was lying unconscious on the bedroom floor. EMT personnel soon arrived, and found the Victim unresponsive with a wound in her chest near her heart, and with no pulse or blood pressure. In the kitchen, police found a bloody knife in the sink. The Victim was transported to nearby Southside Hospital, but never regained consciousness and was dead on arrival. (T. 294-312, 325, 342-43, 345-46, 381-82, 417-18).

Petitioner was brought to the local precinct and held for questioning by detectives. (T. 327-29, 331.) The substance of the interrogation is described in Section I.A., *supra*. (*See also* T3. 20-41, 60-67).

---

[6] "T." refers to the trial transcript for November 4, 14, 16 and 18, 2005; "T2." refers to the trial transcript for November 15, 2005; and "T3." refers to the trial transcript for November 17, 2005.

4

Homicide detectives and forensic officers were called to the scene. Detectives learned that Petitioner and the Victim had a history of violent arguments and that the Victim had obtained an order of protection against Petitioner (T. 49-71). Bloodstains were found on the kitchen and bedroom floor. Two knives were recovered, one in the bedroom with the Victim and a larger bloodied knife found in the kitchen sink (T. 338-61, 502).

Marlena, the 15-year old daughter of Petitioner and the Victim, testified that her parents fought often and that the police had to be called to their home on November 3, 2002. She testified that, during an argument, her father had gone into the kitchen and come back with a knife. She and Patria got between the couple, and were able to take the knife away from their father. The police responded, and arrested Petitioner. Thereafter, her mother and father separated, and her mother obtained a protection order against her father. (T. 418-440).

Patria again testified to the November 30, 2003 incident at trial (T. 443-446). She also testified that on the night of September 2, 2004, her mother was in the living room of their apartment eating a mango. She asked Patria to get her a knife from the kitchen to cut the fruit. Soon thereafter, Petitioner arrived at the apartment, and the couple began watching television together on the couch in the living room. There, they began arguing over whether her mother was cheating on Petitioner with someone named "Tony". (T. 415-16, 434-35, 454, 456, 475). Patria heard her mother scream, and ran towards the living room in time to see Petitioner stab her mother with the mango knife (T. 455-57, 474, 476-80).

Pablo Rodriguez owned the property at 40 Oak Ridge Drive, and rented the downstairs space of his house to the Victim (T2. 51-53). On September 2, 2004, while at home watching television, Mr. Rodriguez heard screaming, went downstairs to investigate, and found Petitioner and his three daughters, who were screaming (T2. 54-55, 65-66; T 458-61). When Rodriguez

asked what was happening, Petitioner said that he thought he had killed his wife, and told Rodriguez to call an ambulance (T2. 55, 57, 72, 82-85).

At trial, defense counsel requested that the jury be instructed on both manslaughter in the first and second degrees as lesser-included offenses to the second-degree murder charge. The court only granted the request to charge first-degree manslaughter as a lesser included offense. (Dkt. 1-2 at 12.)

On November 21, 2005, Petitioner was convicted of Murder in the Second Degree and Criminal Contempt in the First Degree. (T4. 99)[7]. On January 10, 2006, Petitioner was sentenced to a prison term of 25 years to life on the murder conviction and 1-1/3 to 4 years on the criminal contempt conviction, to run concurrently. *People v. Beriguete,* 51 A.D.3d 939, 939-40, 858 N.Y.S.2d 369 (2d Dep't 2008); (S. 21)[8].

## III. Direct Appeal

On October 27, 2008, Petitioner appealed his conviction and sentence, challenging his conviction and sentence on the following grounds: (1) the trial court erred by refusing to charge manslaughter in the second degree as a lesser-included offense; (2) the legal sufficiency and weight of the evidence did not support his conviction; (3) the trial court improperly admitted prior bad act evidence; and (4) his sentence was harsh and excessive. *Beriguete,* 51 A.D.3d at 939-40. The New York Supreme Court, Appellate Division affirmed the trial court's judgment on May 20, 2008. The court held that Petitioner's challenge to the denial of a lesser-included offense charge was "foreclosed by the jury's finding him guilty of murder in the second degree, the crime alleged in the indictment, and its implicit rejection of the lesser-included offense of

---

[7] "T4." refers to the trial transcript for November 21, 2005.

[8] "S" refers to the transcript of the sentencing hearing on January 10, 2006.

manslaughter in the first degree." *Id*. The Court found that the evidence was legally sufficient to establish his guilt beyond a reasonable doubt, and that the guilty verdict was not against the weight of the evidence. *Id.* at 940. The Court also held that the trial court properly admitted prior bad act evidence to establish Petitioner's motive and absence of mistake, and that his sentence was not excessive. *Id.* On August 18, 2008, the New York Court of Appeals denied Petitioner's application for leave to appeal. *People v Beriguete*, 11 N.Y.3d 734, 864 N.Y.S.2d 393 (2008).

## IV. Petition for Writ of Habeas Corpus

On October 23, 2008, Petitioner timely submitted the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 (Petition for Writ of Habeas Corpus ("Dkt. 1").) Petitioner seeks relief on the same grounds for which he sought appellate relief in State court:[9] (1) the trial court erred by not charging the jury on second-degree manslaughter as a lesser-included offense; (2) the trial court erred by admitting evidence of Petitioner's prior bad acts relating to the Victim; (3) the evidence at trial did not establish Petitioner's guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence; and (4) Petitioner's sentence of 25 years to life on the murder conviction and a concurrent term of 1-1/3 to 4 years on the criminal contempt conviction was harsh and excessive. (Dkt. 1-2, 13- 35.)

## DISCUSSION

## I. Applicable Standards for *Habeas Corpus* Relief

Under 28 U.S.C. § 2254(b)(1), a federal court is empowered to "entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties

---

[9] Because Petitioner is proceeding *pro se*, the Court construes his submissions liberally to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

7

of the United States." In order to obtain relief, an individual in custody must demonstrate, *inter alia*, that he has: (1) exhausted all of his potential State remedies; (2) asserted his claims in his State appeals such that they are not procedurally barred from federal *habeas* review; and (3) satisfied the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if his appeals were decided on the merits. *Philbert v. Brown*, 11-CV-1805 (NGG), 2012 WL 4849011, at *5 (E.D.N.Y. Oct. 11, 2012).

### C. *Exhaustion; Procedural Default*

All of Petitioner's claims are properly exhausted and not procedurally barred. The Court, therefore, determines whether these claims meet the deferential standard under AEDPA.

### D. *AEDPA Deference to State Court Merits Adjudications*

Where a State court reaches the merits of a claim asserted in a § 2254 *habeas* petition, the State court's decision is entitled to deference under AEDPA, which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d); *see also Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir. 2002).

The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." *Ryan,* 303 F.3d at 245 (citing *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, -- U.S. --, 131 S. Ct. 770, 786 (2011). Factual issues

8

determined by the State court are presumed to be correct and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. Proffered Grounds for *Habeas* Relief

### A. *Petitioner's Claim that the Trial Court Erred By Not Charging the Jury on Manslaughter in the Second Degree as a Lesser-Included Offense*

Petitioner contends that the trial court erred by failing to instruct the jury as to manslaughter in the second degree as a lesser-included offense to second-degree murder, and thereby deprived him of a fair trial in violation of the Fifth and Fourteenth Amendments. (Pet. Brief at 14.) Petitioner argues that "the facts warranted the downcharge and the trial evidence failed to establish the exact objective circumstances as to how the victim had been stabbed." (Dkt. 1-2, 15.) Petitioner raised this issue on direct appeal, and the Appellate Division found the claim was "foreclosed by the jury's finding him guilty of murder in the second-degree . . . and its implicit rejection of the lesser-included offense of manslaughter in the first degree." *Beriguete,* 51 A.D.3d at 939-40 (citing *People v. Greenwald*, 236 A.D.2d 625, 626, 654 N.Y.S.2d 663 (2d Dep't 1997); *People v. Uddin*, 225 A.D.2d 806, 639 N.Y.S.2d 949 (2d Dep't 1997)).

Petitioner's claim is not cognizable on federal *habeas* review. While the Supreme Court has held that a failure to charge a lesser-included offense in capital cases may be a violation of due process, *Beck v. Alabama*, 447 U.S. 625, 626 (1980), it has never extended that holding to non-capital cases, and the Second Circuit has explicitly declined to do so. *Hegdal v. Fisher*, No. 01-CV-136 (SJ), 2004 WL 1810330, at *3 (E.D.N.Y. 2004) (citing *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996)). In *Teague v. Lane*, 489 U.S. 288, 316 (1989), the Supreme Court held that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure." The Second Circuit, in *Jones v. Hoffman*, accordingly held that because a decision

on whether due process requires the inclusion of lesser-included offenses in non-capital cases would require the announcement of a new constitutional rule, consideration of that issue under federal *habeas* review was precluded by *Teague*. 86 F.3d at 48. "Thus, in the [Second Circuit], habeas review of a state trial court's failure to instruct on lesser-included offenses in non-capital cases is precluded." *Taylor v. Connelly*, No. 18 F. Supp.3d 242, 262 (E.D.N.Y. 2014) (quoting *Franklin v. Ercole*, No. 06-CV-700 (SJF), 2009 WL 763417, at *13 (E.D.N.Y. Mar. 19, 2009) and citing cases); *see also Collins v. Greiner*, No. 02–CV–4727 (JBW), 2003 WL 22953067, at *12 (E.D.N.Y. Oct. 15, 2003) ("Because there is no Supreme Court precedent on this issue . . . rejection of the defendant's claim could not have been contrary to, or an unreasonable application of, clearly established federal law.").

Petitioner was charged with Murder in the Second Degree, which was not a capital offense in New York at the time of the crime.[10] Therefore, the failure to charge a lesser-included offense is not cognizable under federal *habeas* review, and Petitioner's claim must be denied.

### B. *Petitioner's Claim that it was Error for the People to Introduce Evidence of Petitioner's Prior Bad Acts Relating to the Victim*

Petitioner alleges that the trial court improperly admitted evidence of his prior criminal behavior toward the Victim, and thus violated his Due Process rights under the Fifth, Sixth and Fourteenth Amendments. However, the admission of this evidence was proper under New York law. Furthermore, even if the inclusion of the evidence was erroneous, it did not deny Petitioner a fundamentally fair trial.

Under New York law, "evidence of prior crimes or bad acts is admissible if relevant to prove something other than propensity to commit the act or crime, such as motive, intent, or

---

[10] The Court of Appeals of New York held New York's death penalty statute unconstitutional in June 2004, several months prior to the Petitioner's crime. *See People v. LaValle*, 2 N.Y.3d 88, 783 N.Y.S.2d 485, 817 N.E.2d 341 (2004).

identity."[11] *Dann v. Rabideau,* No. 9:05-CV-0969 (LEK/RFT), 2008 WL 2704900, at *5 (N.D.N.Y. Jul. 7, 2008). Moreover, prior bad acts in domestic violence situations are likely to be considered relevant and probative evidence because the aggression is focused on a particular person, thereby demonstrating the defendant's motive and intent. *Bryant v. Artus*, No. 11-CV-1010 (MAT), 2012 WL 528871, at *13 (W.D.N.Y. Oct. 23, 2012), *see also People v. Birenbaum,* 301 A.D.2d 119, 150, 748 N.Y.S.2d 563 (1st Dep't 2002). While the trial court should afford the defense an opportunity to include a limiting instruction with the jury charge regarding how such prior bad acts evidence should be weighed, if the defense declines such an instruction, that claim is not preserved for appellate review. *People v. Gorham*, 17 A.D.3d 858, 861 n.1, 793 N.Y.S.2d 281 (3d Dep't 2005).

In this case, the *Molineux* hearing court ruled that the evidence of Petitioner's 2003 arrest was admissible as "highly probative of the Petitioner's motive and was either directly related or inextricably interwoven with the issue of identity with the assailant." (H2. 28.) Patria's and Officer Leto's accounts that, about a year before the killing, Petitioner had threatened his wife with a knife, which resulted in her obtaining an order of protection against him, is highly probative evidence of Petitioner's intent, motive, and purpose at the time of the killing, especially in light of Petitioner's "accidental killing" defense. (H. 7; T. 497.) At trial, the judge afforded the defense counsel an opportunity to include a limiting instruction, but he declined to do so. (S. 719-20, T3. 7.) Thus, the trial court properly exercised its discretion in admitting evidence of Petitioner's prior violent conduct toward the Victim.

---

[11] Generally, evidence of a prior uncharged crime is inadmissible when used merely to demonstrate a defendant's bad character or propensity to commit criminal conduct, "but may be admissible if linked to a specific material issue or fact relating to the crime charged, and if its probative value outweighs its prejudicial impact." *People v. Westerling,* 48 A.D.3d. 965, 966, 852 N.Y.S.2d 429 (3d Dep't 2008) (citing *People v. Blair,* 90 N.Y.2d 1003, 1004-05 (1997)).

Furthermore, even if erroneous, the admission of the prior bad acts evidence would warrant *habeas* relief only if it deprived the Petitioner of a fundamentally fair trial. *Taylor v. Curry*, 708 F.2d 886, 890-91 (2d Cir. 1983). The standard for determining whether a defendant was deprived of a fair trial in this context is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir. 1985). Other "overwhelming evidence" of defendant's guilt is a factor that weighs against finding that erroneously admitted evidence was sufficiently material to provide the basis for conviction. *Allan v. Conway*, No. 08–CV–4894, 2012 WL 70839, at *22 (E.D.N.Y. Jan. 10, 2012).

Here, there was enough other evidence of Petitioner's guilt to negate the materiality of the prior bad act evidence. The testimony of Petitioner's and the Victim's daughters, their neighbor, and the responding police officers overwhelmingly established that Petitioner was the stabber and that his motive for the stabbing, according to Petitioner himself, was anger at his wife. The forensic evidence regarding the multiple stab wounds to the Victim and the force needed to cause the fatal wound further established Petitioner's intent to kill the Victim and the absence of mistake.

Accordingly, the State court's admission of the prior bad acts evidence was not an unreasonable application of clearly established Federal law, and was not based on an unreasonable determination of the facts based on the evidence presented in State court. The Petitioner's claim for *habeas* relief on this ground is denied.

### C. Petitioner's Claim that the Evidence at Trial did not Establish Guilt Beyond a Reasonable Doubt and that the Verdict was Against the Weight of the Evidence

Petitioner contends that the evidence presented at trial failed to establish his guilt beyond a reasonable doubt and that the verdict was against the weight of the evidence (Dkt. 1-2, 26). He specifically argues that the evidence did not establish the mens rea required for an intentional homicide conviction, but rather only established an intention to cause serious physical injury in response to his wife's violent temper (Dkt. 1-2, 26-27, 31). Petitioner raised this claim in his appeal, and the Appellate Division affirmed his conviction. *Beriguete,* 51 A.D.3d at 940. That decision is entitled to AEDPA deference. d28 U.S.C. § 2254(d). Because Petitioner has failed to meet the heavy burden for establishing legal insufficiency of the evidence, and because a claim that the verdict was against the weight of the evidence is not cognizable under federal *habeas* review, these claims are denied.

A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence to support his state conviction. *See United States v. Aguilar,* 585 F.3d 652, 656 (2d Cir. 2009); *Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997). On *habeas* review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Aguilar*, 585 F.3d at 656; *Flowers v. Fisher,* 296 Fed. Appx. 208, 210 (2d Cir. 2008). The Court "will view the evidence 'in the light most favorable to the government, and constru[e] all permissible inferences in its favor.'" *United States v. Reyes,* 157 F.3d 949, 955 (2d Cir.1998) (quoting *United States v. Puzzo*, 928 F.2d 1356, 1357 (2d Cir. 1991); *see also Jackson,* 443 U.S. at 319; *Sanford v. Burge,* 334 F.Supp.2d. 289, 303 (E.D.N.Y. 2004). All issues of credibility are resolved in favor of the jury's verdict because habeas courts "are not free to reassess the fact specific

credibility judgments by juries or to weigh conflicting testimony." *Sanford,* 334 F.Supp.2d. at 303 (quoting *Vera v. Hanslmaier,* 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (internal quotation marks omitted)).

The forensic evidence regarding the Victim's wounds indicated that Petitioner intended to commit an intentional homicide. Stab wounds other than the fatal wound to the Victim's chest were present on the Victim's body (S. 28, 64), and the degree of force required to cause the deep wound to her chest indicated that the wound did not result from an incidental stabbing[12] (T. 480, 526, 530-31.) Petitioner also testified, and informed police, that he stabbed his wife out of anger because they had had an argument, and she hit him with a spoon. (T. 28.) At the time of the incident, Petitioner's wife had been recuperating from kidney surgery, which limited her ability to be a dangerous threat to him. (T. at 456, 527.) When viewed in the light most favorable to the prosecution, the Court cannot conclude that no reasonable trier of fact would find the evidence insufficient to establish that Petitioner intended to kill his wife. That intent establishes the requisite mens rea for a second-degree murder conviction.

Petitioner's claim that the verdict was against the weight of the evidence is not cognizable on federal *habeas* review. *McKinnon v. Superintendent, Great Meadow Correctional Facility,* 422 Fed. Appx. 69, 75 (2d Cir. 2011); *Correa v. Duncan,* 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001). This claim is grounded solely on state law, and is thus unreviewable in a federal habeas corpus proceeding. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991), *Butler v. Cunningham*, 313 Fed. App'x. 400, 401 (2d Cir. 2009); *Smith v. Lee*, No. 11-CV-0530 (MKB), 2014 WL 1343066, at *10 (E.D.N.Y. March 31, 2014) ("It is well settled

---

[12] Dr. Gwen Harleman provided testimony regarding her autopsy report. She testified about an incised wound on the right side of the Victim's chest and the back side of her arm, explaining that the stab wounds were caused by a sharp instrument that went deeper into the body than a surface injury. (T. 526).

14

that a 'weight of the evidence' claim is distinct from an 'insufficiency of the evidence' claim and is a state claim based on N.Y.C.P.L. § 470.15(5) that is not reviewable in a federal habeas proceeding.") (citing *McKinnon*, 422 Fed. App'x at 75).

Petitioner, therefore, is not entitled to *habeas* relief based either on his claim of legal insufficiency of the evidence or his claim that the verdict was against the weight of the evidence.

### D. *Petitioner's Claim that His Sentence was Harsh and Excessive*

Petitioner contends that his 25-year-to-life sentence was harsh and excessive because he still has the potential to be a productive and useful member of society (Pet'r App. Br. at 35). This claim, however, is not cognizable on federal *habeas* review. An excessive sentence claim may not provide grounds for federal *habeas* relief where a petitioner's sentence is within the range prescribed by state law. *Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)); *Webb v. D.e. LaClair*, 10-CV-7603, 2014 WL 4953559, at *9 (S.D.N.Y. Sept. 30, 2014) (quoting *White*, 969 F.2d at 1383); *Smith*, 2014 WL 1343066, at *11. Here, the sentences imposed on Petitioner's second-degree murder and first-degree contempt convictions were both within the ranges prescribed by New York law. *See* New York Penal Law §§ 70.00(2)(a), 70.00(3)(a)(i) (minimum sentence for second-degree murder, an A-I felony, of 15 to 25 years, and a maximum of life); New York Penal Law § 70.00(2)(e) (maximum sentence for first-degree contempt, an E felony, of four years). Because Petitioner's sentences were within the legally prescribed ranges under State law, no federal constitutional issue is presented. *White*, 969 F.2d at 1383. Petitioner's application for *habeas* relief on this ground, therefore, is denied.

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has demonstrated no basis for *habeas* relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of *habeas corpus* is

denied in its entirety. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: April 21, 2014
       Brooklyn, New York